**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ANN H. LOKUTA,

      Plaintiff,

          v.

ANGELA SALLEMI, JOSEPH A. MASSA,
JR., FRANCIS J. PUSKAS, II, MICHAEL
T. CONAHAN, MARK CIAVARELLA,
WILLIAM T. SHARKEY, SR., and JILL
MORAN,

      Defendants.

CIVIL ACTION NO. 3:CV-13-0288

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are motions to dismiss Plaintiff Ann H. Lokuta's Complaint filed by Defendants William T. Sharkey, Sr. (Doc. 17), Joseph A. Massa, Jr. and Francis J. Puskas, II (Doc. 14), and Angela Sallemi and Jill Moran (Doc. 10). Plaintiff Lokuta, a former Luzerne County Court of Common Pleas judge, asserts claims pursuant to 42 U.S.C. § 1983 for civil conspiracy and violations of her First, Fifth, Sixth, and Fourteenth Amendment rights. Moving Defendants argue that the Complaint fails to state a claim upon which relief can be granted, that the claims are barred by the applicable statute of limitations, that the claims and requests for relief are barred by the *Rooker-Feldman* doctrine, and/or that preclusion law prevents Lokuta from re-litigating the claims and issues in this action. Additionally, Defendants Massa and Puskas contend that they are entitled to prosecutorial and quasi-judicial immunities. Because Lokuta seeks relief that is barred by the *Rooker-Feldman* doctrine; preclusion law prevents her from re-litigating issues decided in the state-court judicial discipline proceeding; prosecutorial immunity bars many of Lokuta's claims against Defendants Massa and Puskas; the Complaint fails to state a claim upon which relief can be granted; and since many of the claims are barred by the statute of limitations;

the motions to dismiss will be granted.

## I. Background

Plaintiff Ann H. Lokuta ("Lokuta") was elected as a judge to the Court of Common Pleas of Luzerne County, Pennsylvania in 1991. (*Compl.*, ¶ 12.) Lokuta was retained for a second ten-year term in 2001. (*Id.*) In 2006, the Pennsylvania Judicial Conduct Board ("JCB") filed disciplinary charges against Lokuta. *See In re Ann H. Lokuta*, 11 A.3d 427, 431 (Pa. 2011) (hereinafter *Lokuta IV*). On January 14, 2011, the Pennsylvania Supreme Court affirmed the Court of Judicial Discipline's sanction that Lokuta be removed from office. *See id.* at 449-50.[1]

Defendants in this action are Angela Sallemi ("Sallemi"), Joseph A. Massa, Jr. ("Massa"), Francis J. Puskas, II ("Puskas"), Michael T. Conahan ("Conahan"), Mark Ciavarella ("Ciavarella"), William T. Sharkey, Sr. ("Sharkey"), and Jill Moran ("Moran"). (*Compl.*, ¶¶ 5-11.) Sallemi was a court reporter for Luzerne County, and shortly after Lokuta was removed from office, Sallemi was promoted to Chief Court Reporter by Ciavarella. (*Id.* at ¶ 5.) Massa was Chief Counsel of the JCB. (*Id.* at ¶ 6.) Puskas was the prosecuting attorney for the JCB for the judicial discipline charges brought against Lokuta. (*Id.* at ¶ 7.) Conahan is a former Court of Common Pleas judge, and for several years he was the President Judge of the Court of Common Pleas of Luzerne County. (*Id.* at ¶ 8.) Ciavarella is also a former Court of Common Pleas judge, and he also served several years as President Judge. (*Id.* at ¶ 9.) Conahan and Ciavarella are both currently serving federal prison sentences. (*Id.* at ¶¶ 8-9.) Sharkey was the Court Administrator for Luzerne County.

---

[1] On a motion to dismiss, a court may consider a prior judicial opinion, but only "to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion." *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010); *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) ("a court may take judicial notice of a prior judicial opinion.").

(*Id*. at ¶ 10.)  Moran was the Luzerne County Prothonotary. (*Id*. at ¶ 11.)

The facts as set forth in the Complaint are as follows:

During Lokuta's tenure as a judge on the Luzerne County Court of Common Pleas, both Conahan and Ciavarella served terms as President Judge responsible for the administration of the Court. (*Id*. at ¶ 12.)  Lokuta was subject to relentless intimidation and retaliation by Conahan and Ciavarella during this time. (*Id*. at ¶ 13.)

Prior to the public exposure of Conahan and Ciavarella's influence over the Luzerne County Court of Common Pleas, Lokuta attempted to develop a record detailing Conahan and Ciavarella's misconduct. (*Id*. at ¶ 16.)  Lokuta brought information about Conahan and Ciavarella to the attention of federal authorities; she met with the FBI; she filed an Emergency Application with the Pennsylvania Supreme Court to address Conahan's corrupt influence; and she notified the Administrative Office of the Pennsylvania Courts of Conahan's conduct. (*Id*. at ¶¶ 17-26.)

Conahan became aware of Lokuta's discussions with federal authorities and orchestrated a scheme to discredit her and have her removed from the bench. (*Id*. at ¶ 28.)  Conahan's knowledge of Lokuta's discussions with the FBI were verified by a JCB Complaint that was sealed from public view based on acts of Massa and Puskas. (*Id*. at ¶ 29.)

Conahan relied on a number of individuals to orchestrate his scheme to discredit Lokuta. (*Id*. at ¶¶ 30-44.)  Susan Weber, Lokuta's former secretary, filed a JCB complaint against Lokuta in April 2004. (*Id*. at ¶ 31.)  After submitting the complaint, Weber was immediately appointed by Conahan as court reporter/secretary, despite her lack of training as a court reporter. (*Id*. at ¶ 32.)  And, the JCB, through Massa and/or Puskas, first interviewed Conahan, not Weber, about the complaint at a meeting attended by Sharkey. (*Id*. at ¶ 33.)  Sharkey then leaked the investigation of Lokuta to the press, but he was never

sanctioned for such conduct by the JCB. (*Id*.) A second complaint against Lokuta was prepared by Conahan and filed through Massa. (*Id*. at ¶ 34.) During this time, Conahan passed out between fifty and one-hundred of Massa's business cards to anyone who would consider complaining about Lokuta. (*Id*. at ¶ 36.) Moreover, during their interviews with the JCB, Moran, Sharkey, Sallemi, and other court reporters alleged that Lokuta was mentally ill. (*Id*. at ¶ 39.) Lokuta disproved these claims. (*Id*. at ¶¶ 40-41.)

Once the JCB could no longer establish that Lokuta suffered from a mental illness or condition of dependency, Puskas began prosecuting her based on pattern evidence relating to past dismissed complaints and non-verified information. (*Id*. at ¶ 42.) Massa and Puskas repeatedly denied that Conahan orchestrated the conspiracy against her, as the three painted her as a recalcitrant and ineffective jurist. (*Id*.)

Many Defendants in this action shared a close relationship with each other. Sallemi and Conahan had a history of working together to accomplish mutually beneficial results. (*Id*. at ¶ 43.) Sharkey and Moran had a history of working closely with Conahan and/or Ciavarella, and Moran, Conahan, and Ciavarella shared a business interest. (*Id*. at ¶ 44.) During Ciavarella's federal criminal trial, Sallemi testified that she received money from Conahan. (*Id*. at ¶ 47.) Sallemi and Conahan also worked together to provide an attorney to represent the Luzerne County court reporters in a salary dispute, and Sallemi visited Conahan's condominium in Florida. (*Id*. at ¶¶ 48-50.) Moran also testified during Ciavarella's criminal trial that she delivered bags of cash to Conahan's chambers. (*Id*. at ¶ 52.) Conahan, though, denied the existence of relationships with courthouse staff. (*Id*. at ¶¶ 45, 53.) And Massa and Puskas prevented Lokuta from exploring these relationships during the judicial conduct proceeding. (*Id*. at ¶ 54.)

Ciavarella's criminal trial in February 2011 brought to light what had previously been withheld from the public, proving what Lokuta unsuccessfully alleged for years in her judicial

conduct proceeding. (*Id*. at ¶ 55.)  This included Sallemi's receipt of money from Conahan, Moran's delivery of cash to Conahan's chambers, and testimony that a bookkeeper for Conahan's business interests made false accounting entries to hide payments, including the payments to Sallemi. (*Id*. at ¶¶ 47, 52, 56.)

Massa and Puskas became obsessed with prosecuting Lokuta and refused to pursue a complaint filed against Conahan during the course of her judicial conduct proceeding. (*Id*. at ¶ 61.)  Massa and Puskas also continued to harass Lokuta following her removal as judge by processing three stale complaints against her. (*Id*. at ¶ 62.)

Based on these factual allegations, Lokuta filed the Complaint in this action on February 5, 2013.  Lokuta alleges claims under 42 U.S.C. § 1983 against Defendants for civil conspiracy and violations of her First, Fifth, Sixth, and Fourteenth Amendment rights. Lokuta requests the following relief:

a.   That this Honorable Court reinstate Lokuta to the Court of Common Pleas;

b.   That this Honorable Court reinstate her pension, health benefits, and insurances;

c.   That this Honorable Court award actual and compensatory damages;

d.   That this Honorable Court award reasonable attorney's fees in pursuit of this Action;

e.   That this Honorable Court allow Lokuta to run for future judicial office; and

f.   That this Honorable Court award such other relief as is just and equitable.

(*Id*. at Wherefore Clauses.)  Lokuta also seeks punitive damages. (*Id*. at ¶¶ 83, 88, 92.)

On March 22, 2013, Defendants Moran and Sallemi (collectively, "County Defendants") filed a motion to dismiss the Complaint. (Doc. 10.)  On March 26, 2013, Defendants Massa and Puskas (collectively, "JCB Defendants") moved to dismiss the Complaint. (Doc. 14.)  And, on March 28, 2013, Sharkey filed his motion to dismiss Lokuta's

Complaint. (Doc. 17.)[2]  The motions to dismiss[3] have now been fully briefed and are ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*.  "While legal conclusions can

---

[2]     Ciavarella filed an Answer and Affirmative Defenses to the Complaint on March 26, 2013. (Doc. 15.)  Conahan has not answered the Complaint or filed a motion to dismiss.  The docket does not reflect whether Conahan has been served.

[3]     Where appropriate, Defendants Sallemi, Moran, Massa, Puskas, and Sharkey will be referred to collectively as "Moving Defendants."

provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d

at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

In their motions to dismiss, County Defendants and Sharkey argue that the Complaint should be dismissed pursuant to the *Rooker-Feldman* doctrine, because Lokuta fails to state a claim, and because the claims are barred by the applicable two-year statute of limitations. Additionally, County Defendants and Sharkey maintain that collateral estoppel precludes the issues raised in the Complaint. JCB Defendants contend that they are entitled to absolute prosecutorial and quasi-judicial immunities, that Lokuta is precluded from pursing the issues in this action, that *Rooker-Feldman* prevents her from obtaining certain requested relief, that Lokuta fails to state a claim, and that the claims are barred by the statute of limitations. As Moving Defendants' arguments in support of dismissal frequently overlap, these arguments will be addressed collectively. And, for the reasons that follow, the motions to dismiss will be granted.

### A.     *Rooker-Feldman*

First, the Court lacks subject matter jurisdiction over Lokuta's claims seeking reinstatement to the Court of Common Pleas and permission to run for judicial office in the future. Thus, these requests for relief will be dismissed.

Under the *Rooker-Feldman* doctrine, "a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006) (internal citations omitted); *see also Exxon*

*Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).[4]  Therefore, a federal court may not consider a claim that would require either determining that the state court judgment was erroneously entered or reversing the state court judgment. *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (citing *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005)).  The doctrine applies not only to decisions of a state's highest court, but to all final decisions of lower state courts. *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 840 (3d Cir. 1996).

The Supreme Court refined the *Rooker-Feldman* doctrine in *Exxon Mobil*:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. 1517.  Analyzing the holding in *Exxon Mobil*, the Third Circuit concluded that a four-part test must be satisfied for the *Rooker-Feldman* doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (internal quotations and brackets omitted), *cert. denied*, - - - U.S. - - -, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (2011).  The second and fourth factors are critical in determining whether a federal suit presents an independent, non-barred claim. *Great W. Mining*, 615 F.3d at 166.

With respect to Lokuta's requests to be reinstated to the Court of Common Pleas and

---

[4]  The *Rooker-Feldman* doctrine originated from two Supreme Court opinions, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

to be permitted to run for judicial office in the future, all four requirements are satisfied. Lokuta lost in state court. Lokuta was removed from office and prohibited from holding any judicial office in the Commonwealth by order of the Court of Judicial Discipline, *see In re Ann H. Lokuta*, 964 A.2d 988, 1136 (Pa. C.J.D. 2008) (hereinafter *Lokuta I*), and the Court of Judicial Discipline's sanction was affirmed by the Pennsylvania Supreme Court, *Lokuta IV*, 11 A.3d at 450 (affirming sanction). These injuries were thus caused by the state-court judgment. Moreover, these issues were resolved in state court two years before the commencement of this action. Finally, the requested relief to be reinstated as judge and allowed to seek judicial office in the future invites the Court to review and reject the state-court judgments. *See, e.g., Muhammad v. Cappellini*, No. 10-CV-2374, 2011 WL 3034393, at *3 (M.D. Pa. July 25, 2011) (the court lacked jurisdiction to grant some of the relief sought by the plaintiff because it would have required reversal of the state-court judgment). Because Lokuta complains of injuries produced by a state-court judgment, and she seeks relief that requires a predicate finding that the state court's judgment was wrongfully entered, these requests for relief are barred by the *Rooker-Feldman* doctrine.

**B.     Preclusion**

Because the *Rooker-Feldman* doctrine only serves as a jurisdictional bar to Lokuta's requests to be reinstated to the Court of Common Pleas and to be permitted to run for judicial office in the future, further analysis is necessary. "As a final step, should the *Rooker-Feldman* doctrine not apply such that the district court has jurisdiction, '[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.'" *Great W. Mining*, 615 F.3d at 170 (quoting *Exxon Mobil*, 544 U.S. at 293, 125 S. Ct. 1517). Federal courts must "give the same preclusive effect to a state-court judgment as another court of that State would give." *Exxon Mobil*, 544 U.S. at 293, 125 S. Ct. 1517. "Congress has directed federal courts to look principally to state law in deciding

10

what effect to give state-court judgments." *See Lance v. Dennis*, 546 U.S. 459, 465, 126 S. Ct. 1198, 1202, 163 L. Ed. 2d 1059 (2006).

Issue preclusion forecloses only a matter actually litigated and essential to the decision. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988) (citing *Duquesne Light Co. v. Pittsburgh Rys.*, 194 A.2d 319, 321 (Pa. 1963)). Otherwise known as collateral estoppel, issue preclusion applies under Pennsylvania law when the following elements are met: (1) the issue decided in the previous action is identical to one presented in the later action; (2) the previous action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the previous action, or is in privity with a party to the previous action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous action. *Jones v. UPS*, 214 F.3d 402, 405-06 (3d Cir. 2000) (citing *Rue v. K–Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)).

Under Pennsylvania law, "collateral estoppel may apply 'to all relevant issues of fact that were actually raised in the prior litigation,' even 'where the cause of action in a pending suit is not identical with that previously litigated.'" *Logan v. Salem Baptist Church of Jenkintown*, No. 10-cv-0144, 2013 WL 4501209, at *16 n.39 (E.D. Pa. Aug. 23, 2013) (citing *McCandless Twp. v. McCarthy*, 300 A.2d 815, 821 (Pa. Cmwlth. Ct. 1973)). Restated, even where there is not a precise identity of the claims asserted, this is "of no legal consequence: there is no such requirement for the application of issue preclusion. Only the issues need be the same." *Witkowski v. Welch*, 173 F.3d 192, 203 (3d Cir. 1999).

A number of issues identical to those presented in this action were decided in Lokuta's judicial conduct proceeding. Among others, the following identical issues were litigated and decided in the state-court proceeding: the Court of Judicial Discipline improperly admitted untimely "pattern evidence" of misconduct, *Lokuta IV*, 11 A.3d at 441-43; Lokuta was denied access to exculpatory information, including the anonymous

complaint filed against Conahan in 2006, *id*. at 442-43; she was selectively prosecuted, *id*. at 446; the JCB engaged in prosecutorial misconduct by overlooking Conahan's corruption and shielding him from investigation because it was pursuing a case against her, *id*. at 447; and the Court of Judicial Discipline improperly limited her cross-examination about Conahan's purported influence over her case, *id*. at 444-45. Moreover, the Court of Judicial Discipline, the Pennsylvania Supreme Court, or both ruled on these issues. And, Lokuta was a party to the judicial conduct proceeding.

Nevertheless, Lokuta argues that collateral estoppel does not apply here because she was not provided a full and fair opportunity to litigate these issues in the course of her judicial conduct proceeding. Specifically, Lokuta contends that since she was not afforded full discovery despite her requests, she did not receive a realistic opportunity to explore her allegations of collusion among Defendants. However, lack of discovery "is an insufficient basis to reject the prior judgment's preclusive effect. Other proceedings lacking discovery, such as motions to dismiss and motions for judgment on the pleadings, are preclusive." *Am. Music Theater Festival, Inc. v. TD Bank, N.A.*, No. 10-cv-638, 2012 WL 72706, at *6 n.14 (E.D. Pa. Jan. 10, 2012). In any event, Lokuta was afforded discovery rights pursuant to the Court of Judicial Discipline Rules of Procedure. *See* Pa. C.J.D.R.P. No. 401. Moreover, as noted by Defendants, Lokuta was represented by counsel in the judicial conduct proceeding. At that trial which was conducted over multiple days, Lokuta testified for five days. *See Lokuta I*, 964 A.2d at 1001 n.4. Lokuta was also able to appeal the decision of the Court of Judicial Discipline, have the case remanded for further proceedings by the Pennsylvania Supreme Court, appeal the subsequent decision of the Court of Judicial Discipline, and file a petition for writ of certiorari to the United States Supreme Court. During the course of these proceedings, Lokuta was able to present evidence and advance legal arguments. Lokuta thus had a full and fair opportunity to litigate the above-identified

12

issues. Accordingly, as the requirements for issue preclusion are satisfied, collateral estoppel prevents Lokuta from re-litigating these issues in this case.

**C.    Immunity**

In addition to asserting that Lokuta's claims are barred by *Rooker-Feldman* and preclusion law, JCB Defendants argue that they are entitled to prosecutorial and quasi-judicial immunities.

Prosecutors are subject to varying levels of official immunity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). Absolute immunity attaches to all actions performed in a "quasi judicial' role, which "includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." *Id*. (citing *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). Conversely, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity. *Id*. (citing *Imbler*, 424 U.S. at 430-31, 96 S. Ct. 984; *Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)). These immunities apply in disciplinary proceedings. *See, e.g., Kwasnik v. LeBlon*, 228 F. App'x 238, 244 (3d Cir. 2007); *Frankel v. Disciplinary Bd. of the Supreme Court of Pennsylvania*, No. 05-CV-1450, 2006 WL 1118050 (E.D. Pa. Apr. 27, 2006).

"A prosecutor bears the 'heavy burden' of establishing entitlement to absolute immunity." *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (citations omitted). The Third Circuit instructs the court to start with the presumption that qualified, not absolute, immunity is appropriate. *See id*. at 207-08.

The court must focus upon the nature of the function performed by the prosecutor, not the identity of the actor. *See Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997). A prosecutor is entitled to absolute immunity when he is functioning

as the state's advocate in performing the questioned actions. *Yarris v. County of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006). Restated, prosecutors are absolutely immune for actions performed in a judicial or quasi-judicial role. *Odd*, 538 F.3d at 208; *Yarris*, 465 F.3d at 135; *Imbler*, 424 U.S. at 430-31, 96 S.Ct. 984. Prosecutorial immunity extends to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993); *see also Haagensen v. Supreme Court of Pennsylvania*, 651 F. Supp. 2d 422, 434 (W.D. Pa. 2009) (allegations against the defendants arose "out of their actions as prosecutors for the state before the Disciplinary Board; thus they are no different from those alleged in *Imbler*. . . . [The defendants] are entitled to absolute prosecutorial immunity from actions they took in the disciplinary proceedings.").

Quasi-judicial immunity, on the other hand, attaches to public officials whose roles are "'functionally comparable' to that of a judge." *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (quoting *Butz v. Economou*, 438 U.S. 478, 513, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978)). "[I]n evaluating whether quasi-judicial immunity grants immunity to a particular official, a court inquires into 'the official's job function, as opposed to the particular act of which the plaintiff complains.'" *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quoting *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006)). Courts have recognized that a "disciplinary proceeding is judicial in nature." *Haagensen*, 651 F. Supp. 2d at 433 (quoting *Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 433, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982)).

JCB Defendants are entitled to absolute prosecutorial immunity for the majority of the conduct about which Lokuta complains. Reviewing Lokuta's allegations, her complaints against the JCB Defendants include the following: (1) the timing with which certain

witnesses were interviewed, (*Compl.*, ¶¶ 33, 39); (2) pursuing a prosecution based on pattern evidence, (*Id*. at ¶ 41); (3) refusing to investigate allegations against Conahan and otherwise ignoring or secreting relevant information, (*Id*. at ¶ 46); (4) opposing repeated attempts to discover Conahan's relationships during the judicial conduct proceeding, (*Id*. at ¶ 54); (5) relentlessly pursuing charges in bad faith while withholding evidence, (*Id*. at ¶¶ 59, 64(b)); and (6) processing three stale complaints against her after she was removed from the Bench. (*Id*. at ¶ 62.)

JCB Defendants have immunity for these claims. First, according to the Third Circuit, "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Yarris*, 465 F.3d at 137. As such, JCB Defendants are entitled to immunity on Lokuta's claims that they withheld evidence or improperly secreted evidence against Conahan while functioning as prosecutors in order to preserve his credibility. However, to the extent that the Complaint can be read to state that exculpatory evidence was intentionally destroyed in the course of the judicial conduct proceeding based on Lokuta's averment that witness interview notes were destroyed, (*Compl.*, ¶ 65), absolute immunity would not apply. *See Yaris*, 465 F.3d at 137. Notably, though, Lokuta does not allege the circumstances under which the interview notes were destroyed, that the notes were exculpatory, or that JCB Defendants were involved in the claimed destruction of such evidence. Additionally, JCB Defendants are entitled to absolute immunity for Lokuta's claim that they knowingly offered perjured testimony because the Supreme Court and the Third Circuit have "held that absolute immunity applies to a prosecutor's knowing use of perjured testimony in a judicial proceeding." *Schrob v. Catterson*, 948 F.2d 1402, 1417 (3d Cir. 1991) (citations omitted); *see also Yarris*, 465 F.3d at 139 (use of false testimony in connection with a prosecution is absolutely protected).

15

Absolute immunity can also apply to actions preliminary to the initiation of prosecution and actions apart from the courtroom, as immunity "extends to the preparation necessary to present a case, and this includes the obtaining, reviewing, and evaluation of evidence." *Kulwicki*, 969 F.2d at 1465 (citations and quotations omitted). And "even interviews generating evidence to be presented to a grand jury are absolutely protected." *Id*. Here, JCB Defendants are entitled to absolute immunity regarding which witnesses were interviewed (and the timing of these interviews) because this involved "an investigation undertaken to determine whether to initiate a . . . prosecution." *Galiardi v. Lee*, 154 F. App'x 317, 319 (3d Cir. 2005) (citing *Forsyth v. Kleindienst*, 599 F. 2d 1203, 1215-16 (3d Cir. 1979)); *see also Odd*, 538 F.3d at 208 ("immunity attaches to actions 'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.").

Lokuta's claims against JCB Defendants regarding the processing of stale complaints and pursuing a case against her based on pattern evidence fail because JCB Defendants enjoy "absolute immunity for their conduct in 'initiating a prosecution and in presenting the State's case.'" *Clark v. Vernon*, 228 F. App'x 128, 131 (3d Cir. 2007) (quoting *Imbler*, 424 U.S. at 431, 96 S. Ct. 984). Lastly, JCB Defendants are entitled to absolute immunity for their alleged failure to investigate or prosecute Conahan because "prosecutors enjoy absolute immunity for the failure to adequately investigate a case and for the decision to initiate, or decline to initiate, a prosecution." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (citing *Kulwicki*, 969 F.2d at 1463-64).

Lokuta disputes the applicability of absolute prosecutorial immunity to this case. First, Lokuta argues that JCB Defendants violated Pennsylvania's judicial conduct rules. However, the alleged violations of ethics rules do not eliminate JCB Defendants' entitlement to prosecutorial immunity or give rise to federal constitutional claims, because in

Pennsylvania, "a breach of the Rules of Professional Conduct standing alone cannot be the basis for civil liability." *Home Ins. Co. v. Powell*, No. 95-6305, 1997 WL 370109, at *5 n.8 (E.D. Pa. June 13, 1997) (citing *In re Estate of Pedrick*, 482 A.2d 215, 217 (Pa. 1984); *In re Bloch*, 625 A.2d 57, 63 (Pa. Super. Ct. 1993)); *see also United States v. Laville*, 480 F.3d 187, 1921 (3d Cir. 2007) (It is well understood, however, that "[m]ere violation of a state statute does not infringe the federal Constitution," and that "[s]tate rather than federal courts are the appropriate institutions to enforce state rules."); *Berry v. Village of Millbrook*, 815 F. Sup. 2d 711, 721 n.7 (S.D.N.Y. 2011) ("While, of course, attorneys in the Dutchess DAO must comply with the state's rules of professional conduct, any purported failure to do so does not give rise by itself to liability under § 1983 for which an individual may recover civil damages, as the rules of professional conduct do not confer either federal constitutional or statutory rights.").

Second, Lokuta maintains that there were no judicial safeguards on JCB Defendants' actions. Judicial safeguards on JCB Defendants in Lokuta's case included "codes of professional responsibility," *Kulwicki*, 969 F.2d at 1464, "criminal law and professional discipline," *Burns*, 500 U.S. at 486, 111 S. Ct. 1934 (citing *Imbler*, 424 U.S. at 429, 96 S. Ct. 984), and appeals, *Mitchell v. Forsyth*, 472 U.S. 511, 522, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Based on the foregoing, JCB Defendants are entitled to immunity for their prosecutorial actions related to the discipline proceeding. Specifically, JCB Defendants are afforded immunity with respect to Lokuta's claims relating to who they interviewed, the evidence they relied on in prosecuting her, the decision not to pursue an action against Conahan, their relentless pursuit of charges against her by processing stale complaints, and

their withholding of material evidence while functioning in a prosecutorial capacity.[5]  As a result, Lokuta's claims against JCB Defendants based on these actions will be dismissed.

## D.     Failure to State a Claim

In addition to the arguments previously addressed relating to *Rooker-Feldman*, issue preclusion, and immunity, Moving Defendants contend that the Complaint fails to state a claim upon which relief can be granted.  Additionally, Moving Defendants argue that the claims are all barred by the applicable statute of limitations.

Lokuta's claims are asserted pursuant to 42 U.S.C. § 1983.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983.  "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).  "[A] state official sued under § 1983

---

[5]     Lokuta also argues in her brief that Massa acted upon information given to him by Conahan and "adopted this information as his own.  Massa was the actual affiant on the 2nd Complaint filed and litigated against Lokuta." (Doc. 27, 4.)  Thus, Lokuta concludes that "[w]hen Massa adopted Conahan's complaint as his own, he moved from the position of prosecutor to witness and was no longer entitled to immunity." (*Id.* (citing *Kalina v. Fletcher*, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997)). To the extent that Massa was the "actual affiant" of the second complaint, this would only impact Massa's right to immunity when acting as a complaining witness.  It would not impact his right to immunity when he was performing the traditional functions of an advocate. *See Kalina*, 522 U.S. at 129, 131, 118 S. Ct. 502.  Moreover, the Complaint does not allege that Massa was the complaining witness for the second complaint.  Rather, Lokuta avers that the second complaint was "put together by Conahan, handed to the JCB, and thereafter filed through Massa under Massa's auspices." (*Compl.*, ¶ 34.)

18

may be held personally liable only 'for his or her own misconduct.'" *Mitchell v. Miller*, 884 F. Supp. 2d 334, 358 (W.D. Pa. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

### 1.    Fourteenth Amendment

Lokuta alleges that Moving Defendants violated her due process rights under the Fourteenth Amendment to the United States Constitution.  The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  Due process under the Fourteenth Amendment has both "substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).

To state a procedural due process claim, "a plaintiff must allege that: (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, and property'; and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  Thus, "for a procedural due process violation, courts must determine (1) whether the individual had a protected interest making available the due process protections, and if so, (2) whether the individual was afforded appropriate process." *Brace v. Cnty. of Luzerne*, 873 F. Supp. 2d 616, 627 (M.D. Pa. 2012).  Although the Complaint is not entirely clear as to the nature of her due process claim, Lokuta's brief indicates that she is advancing a procedural due process claim for the loss of her vested pension, medical benefits, and insurance, as well a liberty interest in occupation claim. (Doc. 19, 9-11.)

Lokuta's procedural due process claim relating to the termination of her pension, medical benefits, and insurance will be dismissed because exclusive authority over these benefits rests with the State Employees' Retirement System ("SERS"), and SERS is not a

defendant in this action. As set forth recently by the Pennsylvania Commonwealth Court, while the Court of Judicial Discipline determines the level of discipline to be imposed in accordance with established misconduct, "it cannot make any decisions directly relating to retirement benefits. SERS has exclusive authority over these benefits." *Berkhimer v. State Employees' Retirement Board*, 60 A.3d 873, 879 (Pa. Cmwlth. Ct. 2013) (citing Sections 5901–5956 of the State Employees' Retirement Code (Retirement Code), 71 Pa. C.S. §§ 5901– 5956). The *Berkhimer* court further explained that "[t]he constitutional and statutory provisions do not provide for a forfeiture of benefits based upon a finding of disrepute. Rather, these provisions mandate a forfeiture where a violation of Article V, section 18 [of the Pennsylvania Constitution] has occurred and suspension or removal has been ordered by the Court of Judicial Discipline." *Id*. at 879-80. Because SERS has exclusive authority regarding decisions involving Lokuta's retirement benefits, Moving Defendants were not personally involved in any deprivation of her alleged property rights and they cannot be liable with respect to the termination of Lokuta's retirement benefits. *Cf. Hofnagle v. Pine Grove Borough*, No. 12-2468, 2013 WL 2435363, at *5 (M.D. Pa. June 4, 2013) (since the defendants did not possess statutory authority to terminate the plaintiff's employment, they did not owe him any procedural due process rights); *Kohn v. Sch. Dist. of City of Harrisburg*, 817 F. Supp. 2d 487, 508 n.16 (M.D. Pa. 2011) ("we agree with the Elected School Board members that they cannot be liable on this claim based on the termination of the agreements, as the members of the Board of Control engaged in that conduct.").

Lokuta also suggests in her brief that she had a "'liberty interest' to engage in the occupation of her choice.'" (Doc. 19, 10.)

> [T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation; state actions that exclude a person from one particular job are not actionable in due process claims. Thus, it is the liberty interest to pursue a calling or occupation, not the right to a specific job, that is secured by the Fourteenth Amendment. Therefore, Plaintiffs must allege an inability to obtain employment within the

field, not just a particular job or at a specific location or facility.

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley*, 385 F. App'x 135 (3d Cir. 2010) (citation omitted) (emphasis added); *see also Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994) ("'It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.'"). Here, Lokuta's allegations seem to be only that she is prevented from holding judicial office, as opposed to being deprived of her ability to purse a calling in the legal field generally. However, even if Lokuta adequately alleges a liberty interest in her occupation, she was afforded all process due prior to the termination of this interest. That is, Lokuta was provided notice of the judicial discipline charges, and she was afforded an opportunity to be heard regarding these charges both at trial before the Court of Judicial Conduct and on her appeals to the Pennsylvania Supreme Court. These procedures satisfied the requirements of due process. Lokuta's Fourteenth Amendment claim will be dismissed.

### 2. Fifth Amendment

Lokuta's claim against Moving Defendants for violation of the Fifth Amendment to the United States Constitution will be dismissed. The Due Process Clause of the Fifth Amendment applies to actions of the federal government. *See* U.S. Const. amend. V; *see also B & G Const. Co., Inc. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011). Because Lokuta does not allege any actions on the part of the federal government, she fails to state a claim under the Fifth Amendment and it will be dismissed.

### 3. Sixth Amendment

Among other protections, the Sixth Amendment to the United States Constitution provides that the accused shall be "confronted with the witnesses against him." U.S. Const. amend VI. "Judicial conduct proceedings are considered quasi-criminal in nature, and, therefore, the defendant is afforded the same constitutional rights as are criminal

21

defendants." *In re Merlo*, 58 A.3d 1, 8 (Pa. 2012) (citing *In re Berkhimer*, 903 A.2d 1255, 1258 (Pa. 2007)). Here, Lokuta argues that Sallemi, Moran, and Sharkey deprived her of her right to cross examine the witnesses against her in violation of her constitutional rights. With respect to Sharkey, Lokuta claims she was "denied her right to effectively cross examine and confront Sharkey as to his nefarious ties and associations with Conahan and Ciavarella, especially their fabrication as to purported court statistics regarding Plaintiff's work." (Doc. 22, 12.) As to County Defendants, Lokuta contends:

> With the concealment of Moran's ties to Conahan and Ciavarella, and Sallemi's ties with Conahan, Plaintiff was denied her right to effectively cross examine and confront Moran and Sallemi as to their nefarious ties and associations with Conahan and Ciavarella as to Moran, and Conahan as to Sallemi. Had it been revealed that Sallemi received monies from Conahan, Plaintiff would have been afforded her 14th Amendment right to explore bias and credibility of Sallemi when she gave her interview to the JCB and gave her testimony before the Court of Judicial Discipline. Had the fact that Moran was involved in the Kids for Cash Scheme of Conahan and Ciavarella been known, Plaintiff would have been able to show bias and challenge her credibility as well.

(Doc. 19, 13.)

Lokuta's Sixth Amendment claim will be dismissed. First, JCB Defendants are entitled to prosecutorial immunity for their alleged conduct during the course of the trial before the Court of Judicial Discipline. Second, Lokuta has already raised, and fully litigated, the issues involving her inability to challenge the bias and credibility of witnesses, after-acquired evidence, and denial of her right to cross examine witnesses before both the Court of Judicial Discipline and the Pennsylvania Supreme Court. The Court of Judicial Discipline noted:

> It must be remembered that the findings and conclusions that this Court made after the trial were based on the testimony of 30 witnesses who testified about events having no relation whatsoever to the events taking place in the criminal world of Conahan, Ciavarella and Sharkey described in the Informations. It must be remembered that Petitioner's defense at her trial was that the witnesses who testified for the Conduct Board were all liars, perjurers, intimidated by and/or beholden to Conahan. We found these witnesses to be credible; and, in contrast to that finding, we found that the Petitioner's testimony on the subject (covering hundreds of pages in the trial record) to be "often tortured and always attenuated."

*In re Ann H. Lokuta*, 989 A.2d 942, 951 (Pa. C.J.D. 2010) (hereinafter *Lokuta III*).   In

affirming the decision of the Court of Judicial Discipline, the Pennsylvania Supreme Court

emphasized:

> The Judicial Conduct Board is responsible for investigating and bringing charges, and at trial, the board must prove the charges by clear and convincing evidence.  In considering whether the evidence presented is clear and convincing, the court must find the witnesses to be credible, and the facts and details to be distinctly remembered.  The witnesses' testimony must be sufficiently clear, direct, weighty, and convincing.  *In re Berkhimer*, [903 A.2d] at 1258 (citations omitted).  "'[Q]uestions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts.'" *Commonwealth v. Myers*, 554 Pa. 569, 722 A.2d 649, 651-52 (1998) (quoting *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873, 875 (1989)).  "'As long as sufficient evidence exists in the record which is adequate to support the [credibility] finding . . . we are precluded from overturning that finding.'" *Id.* (quoting *O'Connell*, [555 A.2d] at 875).
>
> Here, appellant cannot show the court's credibility findings are not supported by sufficient evidence.  While four of the witnesses have now been exposed as criminals, appellant overstates their importance.  Conahan was only called to refute claims appellant made during her testimony.  Ciavarella's testimony mainly concerned her chambers and assignments, and he was not even discussed by the court in *Lokuta I*.  Moran's testimony was corroborated by another witness and a court transcript.  As for the remaining 26 witnesses, all appellant offers is speculation that they were manipulated into testifying against her.  Such speculation as to the coercion of multiple witnesses does not prove there is insufficient record evidence supporting the court's credibility determinations.  Thus, appellant cannot overcome the deference owed to the Court of Judicial Discipline as the trial court and establish that court's credibility findings were clearly erroneous.

*Lokuta IV*, 11 A.3d at 445-46.  Because the issues raised by Lokuta's Sixth Amendment

claim are identical to the issues already litigated in the judicial conduct proceeding, the Sixth

Amendment claim will be dismissed.[6]

### 4.    First Amendment

The First Amendment to the United States Constitution provides that "Congress shall

---

[6]      Additionally, cases involving a Sixth Amendment Confrontation Clause claim are typically "raised against the court that rendered a decision that led to a plaintiff's Sixth Amendment Confrontation Clause violation claim." *Amos v. NMS Labs*, No. 12-2145, 2013 WL 504179, at *11 (M.D. Pa. Jan. 22, 2013); *cf. Kulwicki v. Dawson*, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992) (a witness who testifies falsely at trial is absolutely immune from a § 1983 action for damages).

make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, . . ." U.S. Const. amend. I.

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *See Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) (citing, *inter alia, Pickering v. Board of Education of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) and *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987)). The Supreme Court has identified two inquiries to guide interpretation of the constitutional protections afforded to public employee speech. *Id*. at 418, 126 S. Ct. 1951. "The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on her or her employer's reaction to the speech." *Id*. (citing *Connick*, 461 U.S. at 147, 103 S. Ct. 1684). But, "if the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id*.

Lokuta argues that Moving Defendants retaliated against her in violation of the First Amendment. Lokuta alleges that Defendants criticized her for using her courtroom "to voice

concerns over what she believed to be irregularities existing within the administration of the Luzerne County court system, and in fact used her speaking out as a basis for the some of the charges against her." (*Compl.*, ¶ 94.) Similarly, she asserts that "[i]n pursing Lokuta for speaking out against what was ultimately proven to be serious misconduct and illegalities concerning, *inter alia*, case assignments and court procedures," Defendants violated her First Amendment rights. (*Id*. at ¶ 95.)

### a. JCB and County Defendants

Lokuta fails to state viable First Amendment retaliation claims against JCB Defendants and County Defendants. As for the retaliation claim against JCB Defendants, they are entitled to immunity for their conduct in initiating the prosecution and in presenting the judicial discipline charges against Lokuta for the reasons discussed above. *See Tindell v. Pennsylvania*, 398 F. App'x 696, 698 (3d Cir. 2010) (citing *Imbler*, 424 U.S. at 431, 96 S. Ct. 984). Thus, the claim will be dismissed.

Lokuta also fails to allege that County Defendants violated her First Amendment rights. "In order to hold an individual defendant liable under § 1983, [Lokuta] must establish that he or she was personally involved in the violation of her First Amendment rights." *Mitchell*, 884 F. Supp. 2d at 358-59 (citing *Evancho v. Fisher*, 423 F.3d 347, 353-54 (3d Cir. 2005)). Lokuta contends that some of the judicial discipline charges against her related to her criticisms of the administration of the Luzerne County court system. But, with respect to County Defendants' personal involvement in the alleged retaliation, Lokuta simply argues that "Moran and Sallemi criticized Plaintiff for making such commentary, gave interviews to the JCB about the same, and Sallemi provided transcripts." (Doc. 19, 15.) These allegations fail to sufficiently state a claim that County Defendants retaliated against Lokuta

in violation of the First Amendment.[7]

### b. Statute of Limitations

The First Amendment retaliation claims are also subject to dismissal as to all Moving Defendants because Lokuta failed to file the claims within the applicable limitations period.[8]

"Claims under 42 U.S.C. § 1983 are governed by the state's statute of limitations for personal injury claims." *Mills v. City of Philadelphia*, 479 F. App'x 414, 415 (3d Cir. 2012) (citing *Pratt v. Thornburgh*, 807 F.2d 355 (3d Cir. 1986)). The parties agree that the statute of limitations applicable to Lokuta's § 1983 claims in this case is two years. *See id.* (citing 42 Pa. Cons. Stat. § 5524).

State law also generally governs tolling principles. *See Dique v. N.J. State Police*,

---

[7]    On the other hand, Lokuta sufficiently alleges that Sharkey was directly involved in retaliating against her for statements made regarding the administration of the Luzerne County Court of Common Pleas. Specifically, Lokuta alleges that Sharkey was personally involved in the claimed First Amendment retaliation by sharing her in-court statements with the JCB, providing documents and letters to the JCB which identified Lokuta as a public complainant, serving as a conduit between the JCB and Conahan, and leaking to the media that Lokuta was under investigation by the JCB. These allegations adequately state a First Amendment claim against Sharkey. However, as explained in detail in Part III(D)(4)(b)(i)-(iv), the retaliation claim against Sharkey is subject to dismissal because it is barred by the statute of limitations.

[8]    Generally, under the Federal Rules of Civil Procedure, affirmative defenses, such as a statute of limitations defense, should be raised by way of answer to the complaint. *See* Fed. R. Civ. P. 8(c); *see also Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002) ("a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion"). Nevertheless, the law of this Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only 'if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Id.* (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). The bar, however, must be apparent on the face of the complaint, otherwise the statute of limitations may not afford the basis for dismissal of a complaint under Rule 12(b)(6). *See id.* (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

603 F.3d 181, 185 (3d Cir. 2010). In Pennsylvania, the statute of limitations may be tolled by the discovery rule or the fraudulent concealment doctrine. *See Mest v. Cabot Corp.*, 449 F.3d 502, 510, 516 (3d Cir. 2006). The discovery rule tolls the statute of limitations when an injury or its cause was not known or reasonably knowable "despite the exercise of due diligence." *Id*. at 510 (quoting *Pocono Int'l Raceway v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (1983)). The fraudulent concealment doctrine tolls the statute of limitations when "through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry." *Mest*, 449 F.3d at 516 (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)). And, the continuing violations doctrine is an equitable exception to the timely filing requirement. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). As such, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.'" *Id*. (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)).

Moving Defendants argue that as the Complaint was filed on February 5, 2013, any acts that occurred prior to February 5, 2011 cannot serve as the foundation for Lokuta's claims. In opposition, Lokuta maintains that key facts supporting her claims were not revealed until February 2011 at Ciavarella's trial. Citing the discovery rule, the fraudulent

27

concealment doctrine, the continuing violations doctrine, and equitable tolling, she asserts that the statute of limitations was tolled until February 2011. And, because the Complaint was filed within two years of the testimony at Ciavarella's trial, Lokuta reasons that the action was timely filed.

### i. Discovery Rule

Under the discovery rule, "even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *Mest*, 449 F.3d at 510 (quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003)). Restated, the limitations period commences upon the plaintiff's "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). Thus, "the discovery rule focuses not on 'the plaintiff's actual knowledge, but rather on 'whether the knowledge was known, or through the exercise of diligence, knowable to' the plaintiff." *Mest*, 449 F.3d at 511 (quoting *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991)).

Based on the facts set forth in the Complaint, the filings in the judicial conduct proceeding, and her submissions in opposition to the instant motions to dismiss, it is apparent that Lokuta discovered her alleged injuries were caused by Moving Defendants long before February 2011. As set forth in the Complaint, Lokuta "always contended" that powerful individuals targeted her for removal and had used the JCB to discredit her and remove her from office. (*Compl.*, ¶ 37.) She further alleges that her criticisms about the administration of the Luzerne County Court of Common Pleas were the "basis for some of the charges against her." (*Id*. at ¶ 94.) Lokuta expanded on this in her submissions in

opposition to the motions to dismiss:

> From the very outset of her proceedings before the CJD, the Plaintiff alleged a conspiracy among the witnesses against her orchestrated by Conahan. This allegation was repeatedly and consistently denied by Conahan and participants in the JCB proceeding. Plaintiff attempted, unsuccessfully, to discover information during the state court proceedings, starting with her original deposition given to the JCB, specific requests for discovery, continuing during cross examination of witnesses who testified against her, and thereafter in petitions to reopen her proceedings.

(Doc. 27, 17.) Lokuta also knew of Conahan, Ciavarella, and Sharkey's criminal indictments and Moran's Stipulation of Compromise in February 2009. (Doc. 19, 20.) Nevertheless, Lokuta contends that the discovery rule tolls the limitations period until February 2011 because it was only at Ciavarella's criminal trial that the corrupt relationships of Moving Defendants were established beyond "rank speculation," (Doc. 27, 18), when these relationships "were finally admitted and became public." (Doc. 19, 21.) However, "the limitations period is 'not postponed until the injured party knows every fact necessary to bring his action.'" *Brawner v. Educ. Mgmt. Corp.*, No. 11-6131, 2012 WL 3064019, at *13 (E.D. Pa. July 27, 2012) (quoting *Danysh v. Eli Lilly and Co.*, 461 F. App'x 75, 77 (3d Cir. 2012)); *see also Brawner v. Educ. Mgmt. Corp.*, 513 F. App'x 148, 151 (3d Cir. 2013) ("knowledge of every fact necessary to prevail on the claim is not required to . . . trigger the accrual period."). Here, as Lokuta "discovered that [s]he had been injured and that [her] injury had been caused by another party's conduct well before" February 2011, *Danysh*, 461 F. App'x at 77, the discovery rule does not afford Lokuta relief from the statute of limitations.

### ii.    Fraudulent Concealment

The doctrine of fraudulent concealment is also recognized under Pennsylvania law.

> The doctrine of fraudulent concealment is an exception to the requirement that a complaining party must file suit within the statutory period. Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. The defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient . . . mere mistake, misunderstanding or lack of knowledge is insufficient however,

and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

*Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 278 (Pa. Super. Ct. 2005). "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." *Kingston Coal Co. v. Felton Min. Co.*, 690 A.2d 284, 291 (Pa. Super. Ct. 1997). "[T]he fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." *Mest*, 449 F.3d at 516 (citing *Bohus*, 950 F.2d at 925-26).[9]

Here, the fraudulent concealment doctrine does not apply to Lokuta's retaliation claims. As detailed above, Lokuta knew of her claims before February 2011. Moreover, the fraudulent concealment doctrine is inapplicable to the facts of this case because Moving Defendants' conduct did not cause Lokuta to relax her vigilance or deviate from her right of inquiry. Rather, Lokuta repeatedly advanced the arguments in the judicial conduct proceeding that have been raised in this litigation. Lokuta, therefore, did not justifiably rely on any alleged concealment by Moving Defendants, and the fraudulent concealment does not provide Lokuta relief from the statute of limitations.

### iii.    Continuing Violations

The continuing violations doctrine is also an equitable exception to the timely filing requirement. The continuing violations doctrine provides: "when a defendant's conduct is

---

[9]      Although similar, the discovery rule and fraudulent concealment doctrine are distinct rules under Pennsylvania law. *See Fine v. Checcio*, 870 A.2d 850, 858, 860 (Pa. 2005). The discovery rule acts to toll the accrual of the statute of limitations during the time in which the plaintiff is unable through reasonable diligence to discover the injury and its cause. Conversely, the fraudulent concealment doctrine tolls the running of the statute of limitations due to a defendant's concealing conduct. *See id.*

part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell*, 263 F.3d at 292. Courts in the Third Circuit consider the doctrine to be a narrow exception that is "often invoked but infrequently applied." *See Swift v. McKeesport Hous. Auth.*, 726 F. Supp. 2d 559, 568 (W.D. Pa. 2010).

However, the continuing violations theory cannot be applied to acts which are independently actionable. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112–14, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (holding that the continuing violations theory does not apply to discrete, independently actionable events even if they are related to or are a part of a pattern or practice of discrimination); *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (applying the Supreme Court's holding in *Morgan*, a Title VII case, to § 1983 retaliation claims). *Morgan*, according to the Third Circuit,

> established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a . . . claim. The former must be raised within the applicable limitations period or they will not support a lawsuit . . . . The latter can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.

*O'Connor*, 440 F.3d at 127.

The Third Circuit explained in *O'Connor* that:

> [T]he *Morgan* rule that individually actionable allegations cannot be aggregated is of particular import in the context of First Amendment retaliation claims. First Amendment retaliation claims are always individually actionable, even when relatively minor.

*O'Connor*, 440 F.3d at 127-28 (emphasis added). Thus, the Third Circuit recognized that the continuing violations theory does not apply to First Amendment retaliation claims. *Id. see also Baur v. Crum*, 882 F. Supp. 2d 785, 797 (E.D. Pa. 2012) (*O'Connor* "explicitly held that the continuing violations theory does not apply to First Amendment retaliation claims."); *Breslin v. Dickinson Twp.*, 09-cv-1396, 2010 WL 3293337, at *5 (M.D. Pa. Aug. 19, 2010)

(same).

Moreover, "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation." *Mumma v. High–Spec, Inc.*, 400 F. App'x 629, 632 (3d Cir. 2010) (quoting *Weis-Buy Serv., Inc. v. Paglia*, 411 F.3d 415, 422-23 (3d Cir. 2005); *see also Singer v. Bureau of Prof'l & Occupational Affairs*, - - - F. App'x - - -, 2013 WL 3032176, at *2 (3d Cir. June 19, 2013) (continuing violations doctrine did not apply to case where the plaintiff's license to practice psychology which was suspended twenty years before case was filed because the harm was traceable to that suspension and "[i]f the law permitted a different result, then in the not unusual situation in which a personal injury plaintiff is suffering on an ongoing basis from injuries caused by an accident, he could sue far beyond the limitations period measured from the time of the accident to seek compensation for those injuries.").

In view of these principles, the continuing violations doctrine is inapplicable to Lokuta's First Amendment claims. The acts of retaliation for which Lokuta complains, such as providing transcripts, giving interviews to the JCB, and leaking to the media the fact of the judicial conduct investigation, were all individually actionable events which occurred prior to February 2011. Thus, Lokuta's First Amendment retaliation claim should have been filed within two years of those events. The continuing violations doctrine also does not apply because Lokuta is attempting to invoke the doctrine based on the ongoing consequences from the alleged retaliation, *i.e.*, her removal from the bench and the prohibition against running for judicial office in the future. Because the continuing violations doctrine focuses on the unlawful acts of defendants and not the continual ill effects from the original violation, the doctrine does not apply in this case. Thus, Lokuta cannot rely on the continuing violations doctrine to make timely her First Amendment claims which accrued before February 2011.

### iv. Federal Equitable Tolling

Finally, Lokuta's submissions suggest that she is attempting to invoke federal equitable tolling principles. (Doc. 19, 18 (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994)). "Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." *Oshiver*, 38 F.3d at 1387.

Although state tolling principles generally govern § 1983 claims, "[w]here state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). The Third Circuit has recognized three general circumstances in which federal equitable tolling is appropriate: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000).

Lokuta's alleged circumstances do not warrant the application of federal tolling principles in this case. Here, no extraordinary circumstances within the contemplation of federal equitable tolling principles prevented Lokuta from timely asserting her First Amendment claims. And, for the reasons previously mentioned, Lokuta was not actively misled with respect to her First Amendment causes of action. Therefore, Lokuta is unable to invoke federal equitable tolling principles to toll the statute of limitations.

### 5. Civil Conspiracy

Lokuta also asserts a civil conspiracy claim against all Moving Defendants pursuant to § 1983. To make out a conspiracy claim under § 1983, a plaintiff must show that "persons acting under color of state law conspired to deprive [her] of a federally protected right." *Perano v. Township of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011).

"Section 1983 does not provide a cause of action *per se* for conspiracy to deprive one of a constitutional right." *Holt Cargo Sys. Inc., v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998). Rather, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a federal right. *Perano*, 423 F. App'x at 239. Because Lokuta fails to successfully plead an actionable constitutional deprivation by Moving Defendants, she cannot plead a viable conspiracy claim under § 1983.

The civil conspiracy claim also fails because Moving Defendants are not alleged to have committed any overt acts causing injury to Lokuta within the applicable limitations period. *See Arneault v. O'Toole*, 864 F. Supp. 2d 361, 408 (W.D. Pa. 2012) (two-year statute of limitations applies to conspiracy claims brought pursuant to § 1983.). In the Third Circuit, the statute of limitations on a § 1983 conspiracy claim begins to run from the commission of each overt act causing injury:

> For each act causing injury, a claimant must seek redress within the prescribed limitations period. Such a rule is consistent with the distinction between civil and criminal conspiracies. In the civil case, actual injury is the focal point, not the illegal agreement *per se*, as is true in the criminal context.
>
> Adoption of the last overt act rule . . . would invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period. No unfairness results in requiring diligence in seeking a remedy within the period measured from the date an injury occurs.

*Id*. (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993)).

Here, Moving Defendants' alleged overt acts in furtherance of the conspiracy occurred before February 5, 2011. Specifically, Moving Defendants are all alleged to have deprived Lokuta's constitutional rights before and during the judicial conduct proceeding, and, as a result, Lokuta is alleged to have suffered injuries. However, no overt acts in furtherance of the conspiracy causing Loktua's claimed injuries are alleged to have occurred after February 5, 2011. Indeed, the only facts alleged in the Complaint that occurred within the limitations period relate to testimony at Ciavarella's trial in February 2011 that revealed the full extent of what had been previously withheld from the public but claimed for years

by Lokuta. (*Compl.*, ¶¶ 47-55.)  But, based on the facts set forth in the Complaint, it is not plausible that this testimony constituted an overt act in furtherance of the conspiracy to retaliate against Lokuta and remove her from judicial office, or that this testimony caused Lokuta's alleged injuries.  Thus, since Moving Defendants' overt acts in furtherance of the conspiracy that caused Lokuta's claimed injuries all occurred over two years before the Complaint was filed in this action, the civil conspiracy cause of action is barred by the statute of limitations.

## IV. Conclusion

For the above stated reasons, the motions to dismiss filed by JCB Defendants, County Defendants, and Sharkey will be granted.  Although the Third Circuit has instructed that a district court must permit a curative amendment if a claim is vulnerable to a 12(b)(6) dismissal, a court need not grant leave to amend if amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  Because the grounds for dismissal of Lokuta's Complaint are not curable by amendment, it would be futile to allow Lokuta to amend her claims against Moving Defendants.  Thus, the claims against Moving Defendants will be dismissed with prejudice.

An appropriate order follows.


October 9, 2013                                             /s/ A. Richard Caputo
Date                                                               A. Richard Caputo
                                                                     United States District Judge